**HALOGENATED SOLVENTS INDUSTRY ALLIANCE and Diamond Shamrock Chemicals Company, Petitioners,**

v.

**Lee M. THOMAS, as Administrator of the Environmental Protection Agency, Respondent.**

No. 85–4877.

United States Court of Appeals,
Fifth Circuit.

March 4, 1986.

Malcolm W. Monroe, New Orleans, La., Cleary, Gottlieb, Steen & Hamilton, Donald L. Morgan, Washington, D.C., for petitioners.

Lee M. Thomas, Ad'r, Kenneth F. Gray, John A. Amodeo, Edwin Meese, III, U.S. Atty. Gen., Dept. of Justice, Washington, D.C., for respondent.

Jacqueline M. Warren, Jane L. Bloom, Sarah Chasis, New York City, for intervenor NRDC.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

BY THE COURT:

The respondent, Lee M. Thomas, Administrator of the Environmental Protection Agency (EPA), seeks a transfer of this action to the Court of Appeals for the District of Columbia Circuit. Finding that the regulations under review are within the scope of 42 U.S.C. § 300j–7(a)(1), we grant the requested transfer.

Halogenated Solvents Industry Alliance and Diamond Shamrock Chemical Company filed this petition for review of regulations promulgated by the EPA which establish recommended maximum contaminant levels (RCMLs) for certain volatile, synthetic organic chemicals in public water systems, 50 Fed.Reg. 46,880 (Nov. 13, 1985), pursuant to section 1412(b)(1)(B) of the Safe Drinking Water Act. 42 U.S.C. § 300g–1(b)(1)(B). Their petition was filed on November 27, 1985. We are informed by the EPA that three other petitions for review of the RMCLs were subsequently filed in the D.C. Circuit.

Citing 42 U.S.C. § 300j–7(a)(1),[1] the EPA moves that the instant petition be transferred to the D.C. Circuit. Insofar as it is pertinent to this action, section 300j–7(a)(1) vests the D.C. Circuit with exclusive jurisdiction to review national primary drinking water regulations ("primary regulations"). There is no specific reference to RMCLs. The EPA contends that RMCLs are an integral part of the primary regulations and therefore fall within the grant of exclusive jurisdiction to the D.C. Circuit. Petitioners maintain that although the primary regulations are based, in part, on the RMCLs, the two are not so closely related that RMCLs come within the explicit language of § 300j–7(a)(1).

In order to focus this dispute we must examine the regulatory scheme established by the Safe Drinking Water Act, P.L. 93–523, 88 Stat. 1662, as amended and codified at 42 U.S.C. §§ 300f to 300j–10 ("the Act"). *See also Environmental Defense Fund, Inc. v. Costle*, 578 F.2d 337 (D.C.Cir.1978).

The Act provides for two basic types of regulations: (1) primary drinking water regulations, which specify a maximum contaminant level for chemicals and other substances which "may have any adverse effect on the health of persons" and require the use of treatment techniques to achieve that level or approach it, 42 U.S.C. §§ 300f(1) and 300g–1(b)(3); and (2) secondary drinking water regulations which regulate odor and appearance of drinking water. 42 U.S.C. § 300f(2). We here consider only the primary regulations, which are national in scope.

The Act required the EPA to propose national interim primary regulations within 90 days of the passage of the Act (December 16, 1974) and promulgate them within 180 days of passage.[2] The interim regulations were to take effect 18 months after promulgation. 42 U.S.C. § 300g–1(a). These regulations were affirmed in part and remanded in part in *Environmental Defense Fund, Inc. v. Costle.*

---

**1.** 42 U.S.C. § 300j–7(a)(1) provides that a petition for review of

(1) action of the Administrator in promulgating any national primary drinking water regulation under section 1412, any regulation under section 1413(b)(1), any regulation under section 1414(c), any regulation for State underground injection control programs under section 1421, or any general regulation for the administration of this title may be filed only in the United States Court of Appeals for the District of Columbia Circuit....

**2.** Final interim primary regulations were not promulgated until December 1975. *Environmental Defense Fund, Inc. v. Costle*, 578 F.2d at 340 n. 4.

After its promulgation of the interim primary regulations, the EPA was charged with developing and issuing revised primary regulations. In preparation for these revised primary regulations, the EPA was directed to enter into an arrangement with the National Academy of Sciences, or some other independent scientific organization, for the conduct of a study to determine the drinking water contaminants which posed a health risk, and to establish safe maximum contaminant levels where possible. 42 U.S.C. § 300g–1(e). This study was "to consider only what is required for protection of the public health [*i.e.* scientific evidence], not what is technologically or economically feasible or reasonable." H.R. Rep. No. 93–1185, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 6454, 6471. The report of the National Academy of Sciences, or other organization if selected, was to be submitted to Congress within two years of the passage of the Act. Within 100 days after the submission of the report the EPA was to establish by rule, RMCLs "for each contaminant which, ... based on the [NAS] report ..., may have an adverse effect on the health of persons." 42 U.S.C. § 300g–1(b)(1)(B).[3] Congress intended that the RMCLs be derived from the NAS study and follow it, unless EPA "finds that adequate justification ... exists" to differ from its findings. H.R.Rep. No. 93–1185, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6454, 6472. It is obvious that Congress intended that the RMCLs be based solely on scientific evidence.

It remains for the EPA to promulgate revised primary regulations. On the date the EPA promulgates the RMCLs, it must publish proposed revised primary regulations which are to be issued within 180 days. 42 U.S.C. § 300g–1(b)(2). The revised primary regulations must "specify a maximum contaminant level or require the use of treatment techniques for each contaminant for which a [RMCL] is established.... The maximum contaminant level specified in a revised national primary drinking water regulation for a contaminant *shall be as close to the [RMCL] established under [§ 300g–1(b)(1)(B) ]* for such contaminant as is feasible." 42 U.S.C. § 300g–1(b)(3). (Emphasis added.) As the House Report advises, "[f]easibility is to be determined with reference to the best technology generally available, taking cost into consideration." *Environmental Defense Fund, Inc. v. Costle*, 578 F.2d at 340. Thus, while the revised primary regulations are to closely track the RMCLs, they are not based solely on the scientific evidence of a contaminant's health effects, but must take into consideration the reality of technological and economic factors. These latter involve policy considerations. In this respect, the primary regulations differ from the RMCLs. Petitioners principally rely on this difference.

Against this backdrop of the statutory scheme the positions of the parties are brought into perspective. EPA argues that because the maximum contaminant levels of the revised primary regulations must be as close to the RMCLs as feasible, the RMCLs are an integral part of the revised primary regulations. Since the primary regulations may be reviewed only by the D.C. Circuit, EPA maintains that the RMCLs ought to be reviewed only by that court.

Stressing the differences between the RMCLs and the primary regulations, the former being strictly "scientific" whereas the latter are more "political," petitioners urge that we ought to construe the language of § 300j–7(a)(1) strictly since it is an exception to the general rule allowing a plaintiff to choose the forum.

The positions of the parties are presented very ably and persuasively. Both make the most out of the fact that neither the statutory language nor legislative history compel either result. We do not here consider

---

**3.** We are not informed as to the date of the submission of the NAS report on the chemicals here involved.

the benefits or drawbacks of specialized review of administrative cases by the D.C. Circuit. *See* Currie & Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum,* 75 Colum. L.Rev. 1 (1975). Rather, we seek only to effectuate what we perceive to be the congressional purpose behind § 300j–7(a)(1). Although the legislative history of the Safe Drinking Water Act is of little assistance in determining the purpose behind granting the D.C.Circuit exclusive jurisdiction in certain cases, the history of the Clean Air Act, containing an analogous provision, lends aid.

Section 307(b)(1) of the Clean Air Act, as added by P.L. 91–604, § 12, 84 Stat. 1707, codified at 42 U.S.C. § 1857h–5(b)(1), provides that certain regulations issued pursuant to the Clean Air Act are reviewable only by the D.C.Circuit. The Senate Report emphasizes that the purpose behind this provision is to ensure national uniformity on administrative actions which "are national in scope and require even and consistent national application...." S.Rep. No. 1196, 91st Cong., 2d Sess. 41 (1970); *see* Currie, *Judicial Review Under Federal Pollution Laws,* 62 Iowa L.Rev. 1221, 1261–62 (1977). We are inclined to believe that the motivation for enacting § 300j–7(a)(1) was similar. Since the RMCLs are national in scope, we believe that it comports with congressional intent to find that their review may be had only in the D.C. Circuit. A needless conflict would result if we were to retain jurisdiction over this petition, invalidate the RMCLs as arbitrary, capricious, or not based on substantial evidence, and the D.C.Circuit then reviewed and upheld the revised primary regulations. Such a scenario would, among other things, place our district judges in the awkward position of having to enforce primary regulations whose essential basis had been found wanting by this court. *See* 42 U.S.C. § 300g–3(b).

Reading § 300j–7(a)(1) to encompass the nationally applicable RMCLs is not inconsistent with § 300j–7(a)(2) which permits review of any regulation or order not set forth in (a)(1) in the "court of appeals for the appropriate circuit." The Act expressly recognizes that secondary regulations "may vary according to geographic or other circumstances," 42 U.S.C. § 300f(2). Those regulations rationally should be subject to review in the circuit court for the particular region affected.[1]

We also believe that the EPA's interpretation of the statutory scheme is entitled to some deference. Petitioners argue that no deference is due to EPA's interpretation of the jurisdictional provision. As a general statement, petitioners' contention is correct. We do not defer to the EPA's suggested interpretation of § 300j–7(a)(1). We do, however, give some deference to the EPA's position on the connexity of the RMCLs and the primary regulations. EPA urges that the two sets of regulations are closely intertwined; petitioners dispute this contention and stress the distinctions. The statutory language and legislative history, and the ellipses therefrom, can be marshalled in support of both positions. In such a situation, we are persuaded that we should give substantial deference to the interpretation of the agency responsible for promulgating the regulations and administering and enforcing the Act. That our deference on this substantive interpretation ultimately affects our holding on the jurisdictional issue does not mean that we have deferred unduly to the EPA's reading of § 300j–7(a)(1).

This close case is made even closer by the superb advocacy of the parties. Despite substantial initial reservation, we finally conclude that the respondent's contention is a better fit for our perception of the congressional intent. Accordingly, the motion to transfer this petition for review to the United States Court of Appeals for

---

**4.** Since we find that review of the RMCLs falls within § 300j–7(a)(1)'s grant of exclusive jurisdiction, we need not decide whether the D.C.Circuit is the "appropriate circuit" in which to hear this case. *Cf. NRDC v. EPA,* 465 F.2d 492 (1st Cir.1972); Currie, *supra,* 62 Iowa L.Rev. at 1262–69.

the District of Columbia Circuit is GRANTED.